## DUERDEN v. SOLOMON et al.

No. 1887. Decided April 6, 1908 (94 Pac. 978).

1. MORTGAGES—ABSOLUTE DEED AS MORTGAGE—EVIDENCE—ADMISSIBILITY. In a suit to declare a deed absolute in form a mortgage, the parol evidence rule does not forbid an inquiry into the object of the parties in executing the deed, and equity will look beyond the terms thereof to the real transaction, and, when it is shown that the deed is one of security only, it will be given effect as such.

2. SAME. Whether a deed absolute in form should be treated as a deed or a mortgage depends on the circumstances of the transaction, the purpose for which it was given and received, and whether it was given as security or for a bargain and sale.

3. SAME. Where a contract executed by the parties to a deed absolute in form renders the transaction doubtful as to whether the deed was a conditional sale or a mortgage, it will be treated as a mortgage.

4. SAME—EVIDENCE—SUFFICIENCY. Evidence *held* to justify a finding that a deed absolute in form was a mortgage.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by Richard Duerden against James Solomon and others. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

*N. V. Jones* for appellants.

*Dey & Hoppaugh* and *E. A. Walton* for respondent.

APPELLANT'S POINTS.

"To support a finding that a deed absolute on its face was intended as a mortgage only, the evidence must be clear, convincing, and satisfactory, and of such a character as will leave in mind of the chancellor no hesitation or substantial doubt. In reviewing questions of fact upon appeal, in this class of cases, the same strict rule must be applied by the appellate court." (*Jasper v. Hazen,* 23 L. R. A. 58; *Eames v. Hardin,* 11 Ill. 634; *Gassert v. Bogk,* 7 Mont. 585, 1 L. R. A. 240; affirmed in *Bogk v. Gassert,* 149 U. S. 17, 37 L. Ed. 631; *Locke v. Moulton,* 96 Cal. 21; *Ensminger,* 75 Iowa, 89; *Howland v. Blake,* 97 U. S. 624, 24 L. Ed. 1027; *Kent v. Lasley,* 24 Wis. 654; *Howland v. Blake,* 97 U. S. 624; *Hopper v. Jones,* 29 Cal. 18; *Heley v. Hotalling,* 41 Cal. 22; 1 Jones, Mortg., 253; *Kennedy v. Kennedy,* 57 Mo. 73; *Coles v. Bowne.* 10 Paige 535; *Maxwell Land Grant Case,* 121 U. S. 381, 7 Sup. Ct. 1015; *Johnson v. Quarles,* 46 Mo. 423; *Dalton v. Dalton,* 14 Nev. 419; *Cook v. Fountain,* 3 Swanst. 591; Story, Eq. Jur., 157; *Crissman v. Crissman,* 23 Mich. 217.)

"Whether the deed can be treated as a mortgage or not, must depend upon whether there was a continuing indebtedness from plaintiff to defendant, to be secured by it, for, if there was no indebtedness, there clearly could be no mortgage." (*Wallace v. Johnston,* 129 U. S. 619; *Cadman v. Peters,* 118 U. S. 80; *Cayle v. Davis,* 116 U. S. 108; *Howland v. Blake,* 29 U. S. 624; *Horback v. Hill,* 112 U. S. 144; *Hayes v. Carr,* 33 Ind. 275; *Conway v. Alexander,* 7 Cranch 218; *Cunningham v. Banta,* 2 Ind. 604; *Lee v. Kilburn,* 3 Gray 594;

*Glover v. Payn,* 19 Wend. 518; *Flagg v. Mann,* 14 Pick. 467; *Nelson v. Purshall,* 129 N. Y. 223; *Tilden v. Streeter,* 45 Mich. 540; *Holmes v. Warren,* 145 Cal. 457; *Rogers v. Beach,* 115 Ind. 413.)

RESPONDENT'S POINTS.

In this state a mortgage does not convey title. The title is retained by the mortgagor. (*Peck v. Insurance Co.,* 16 Utah 121; *Thompson v. Cheesman,* 15 Utah 43; *Stevens v. Implement Co.,* 20 Utah 275; *Fields v. Cobbey,* 22 Utah 419; *Azzalia v. St. Claire,* 23 Utah 401.)

In states where a mortgage whatever its form may be, creates merely a lien in the mortgagee while the legal title remains in the mortgagor, neither the surrender or cancellation of the defeasance nor any other act save a subsequent transfer will pass the title to the mortgagee. (1 Jones on Mortgages, sec. 252; *Brinkman v. Jones,* 44 Wis. 498.)

STRAUP, J.

This action was brought by plaintiff against James Solomon and his wife and Nephi and William S. Duerden to have an instrument purporting on its face to be a deed declared a mortgage, and the title to the real estate described therein quieted in plaintiff upon payment of the mortgage indebtedness. The case was tried to the court, who found the facts substantially as follows: In 1891 the plaintiff, who then was the owner and in possession of the real estate, mortgaged it to one Charles Morrell to secure an indebtedness in the sum of $2,-000. At its maturity Morrell demanded payment, and threatened foreclosure proceedings. In August, 1897, plaintiff executed and delivered a deed to Morrell, with the understanding that it should be a mortgage, and, as such, it was received and accepted by Morrell for the security of the indebtedness which then amounted to $2,210, which the plaintiff was required to pay within one year thereafter; together with interest at the rate of eight per cent, per annum. In June, 1898

the plaintiff and the defendant James Solomon entered into an agreement by the terms of which Solomon agreed to pay the amount due Morrell for the use and benefit of the plaintiff, and to hold the premises mortgaged to Morrell as security for the payment of the indebtedness until the sum was paid to Solomon by plaintiff, together with interest at the rate of eight per cent. per annum. In pursuance of the agreement Solomon paid Morrell $2,240, the amount of the indebtedness. Morrell executed and delivered a deed to him as security, but as a part of the transaction, and in consideration thereof, it was agreed between plaintiff and Solomon that the deed, though an absolute conveyance upon its face, should be treated and considered as a mortgage to secure the payment made by Solomon to Morrell. In November, 1897, Solomon also loaned plaintiff an additional sum of $1,100, which was to be repaid by plaintiff, together with interest at the rate of ten per cent. per annum, which loan was also secured by mortgage, in form an absolute deed, upon other property belonging to the plaintiff. From time to time the plaintiff paid Solomon interest on both loans, which were treated by the plaintiff and the defendant as one indebtedness. The total amount of interest paid by plaintiff was the sum of $1,713.40. The payments as made were not applied to each loan separately, but were applied generally to both loans as and for payment of interest. The court applied the payments of interest first to the $1,100 loan, and the remaining payments to the $2,240 loan, which made $790.80 interest paid on the latter loan. In February, 1906, Solomon entered into an agreement to convey to the defendant Nephi Duerden three acres of the premises in question for the sum of $1,000. The contract of sale was made in the presence of plaintiff, and with his consent. In March, 1906, Nephi Duerden paid Solomon $500 on account of the purchase and in April following an additional sum of $500, at which time Solomon executed and delivered to him a deed of conveyance for the three acres. At about the same time the plaintiff offered to pay Solomon the balance remaining due on the indebtedness, and tendered him a sum in excess of the

actual amount of the indebtedness, including interest and principal, and demanded a reconveyance of the property to himself, less that portion conveyed to Nephi Duerden. Solomon refused to reconvey upon the claim made by him that he was the sole owner of the property. During all the time in question the plaintiff remained in possession of the premises and paid the taxes on the property. Giving the plaintiff credit for the $1,000 received by Solomon from Nephi Duerden and the sum of $790.80 interest paid, the court found that there was still due Solomon both principal and interest the sum of $1,843.24. The court thereupon found that the deed held by Solomon, though in form an absolute conveyance, was in fact a mortgage which had been given to secure the payment of $2,240 paid by Solomon to Morrell, and that the amount remaining due, including principal and interest was $1,843.24. The court thereupon adjudged that the plaintiff was required to pay that sum within thirty days from the entry of judgment and upon such payment the title of the premises, less the portion conveyed to Nephi Duerden, was quieted in plaintiff. From this judgment the defendant Solomon has prosecuted this appeal. It is claimed by him that the findings are not supported by the evidence.

It is not contended that it was incompetent to show the real object of the deed by evidence *aliunde* the instrument. It is conceded that in cases such as this courts of equity will look beyond the terms of the instrument to the real transaction, and, when that is shown to be one of security and not of sale, they will give effect to the actual contract of the parties, and that the rule which excludes parol evidence to contradict or vary written instruments does not forbid an inquiry into the object of the parties in executing and receiving the instrument. The contention made is that a presumption arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; that to overcome this presumption and to establish its character as a mortgage the evidence must be clear and convincing; and that the evidence was not sufficient to overcome this presumption, especially in that the evidence did not sufficiently show that any in-

debtedness existed between the plaintiff and the defendant. Whether the instrument should be treated as a deed or mortgage of course depends upon the facts and circumstances of the transaction, the object and purpose for which it was given and received, and whether it was given as security or for a bargain and sale of the land. Upon an examination of the record we are well satisfied that there is sufficient evidence to support the findings. It is not practical, nor do we deem it necessary, to set forth in an opinion an abtract of all the evidence which we think tends to support the findings. Reference to only a few of the prominent features as shown by the evidence is, we think, all that is necessary to warrant the finding that the transaction was one of security, and not of sale. That the deed held by Morrell, though in form an absolute conveyance was in fact a mortgage to secure the payment of an indebtedness of $2,210 and interest owing by plaintiff to Morrell, and that the defendant had knowledge of such fact, is not disputed. The plaintiff testified that after the claim had been placed in the hands of Morrell's attorneys, Messrs. Stephens & Smith, for collection, he sought Solomon for the purpose of obtaining a loan from him to meet the payment and that Solomon agreed to make the loan; that thereupon he and Solomon, in June, 1898, went to the office of Morrell's attorneys, who had charge of the business for Morrell and there the plaintiff, in the presence of Solomon, said: "Mr. Solomon has come to lend me the money and pay Mr. Morrell." Mr. Stephens testified that plaintiff said: "Brother Solomon had arranged to let him have the money to pay off Mr. Morrell, and they wanted to know how much it was, and I told them. Duerden said that he couldn't pay it all at once, and I told him that it would not make any difference; that all that Morrell wanted was to get his money and interest. I said that I would procure a deed from Mr. Morrell to Mr. Solomon, provided he would pay the amount of money which was due, principal and interest, and I believe there was an attorneys' fee of $50. That Solomon stated he was going to let Duerden have the money, or lend it to him; that he was

going to lend the money to Mr. Duerden to make the payment, which, under the agreement with Mr. Duerden should be made to Mr. Morrell within one year" from the 24th of August, 1897. The witness Stephens further testified that "on June 16, 1898, Solomon paid $518, $500 a couple of months later, and in March 1899, further time of payment having been extended, he paid the remainder"; that on the 28th day of June 1898, a deed was executed and delivered to Solomon, who executed a mortgage to Morrell to secure the payment of the remainder of the indebtedness; that after the controversy in this suit had arisen Solomon and his attorney came to the office of the witness to ascertain from him his recollection of the transaction, and in the course of the conversation the witness asked Mr. Solomon if it (referring to the transaction) was not originally a loan to Mr. Duerden, and Solomon said that it was, but that there was a time fixed when it was to be paid. Mr. Smith, Stephens' partner, testified that he heard a part of this conversation; that he could not recollect the exact words used, but "about the first thing that was said Mr. Stephens, in rather a pointed way, said to Mr. Solomon, 'Didn't you take that deed for a loan of money, or as security, or as a mortgage?' and Solomon replied, 'Yes; but he (plaintiff) hadn't paid it at a definite time.'" This admission was denied by the defendant; also by his attorney, who testified as follows: "I asked Mr. Stephens in substance what had occurred, and he told me briefly that it had been a long time ago and said he didn't remember much of it, but he asked the question—I don't know whether it was addressed to me directly, or to both of us (Solomon and his attorney)—'Why, you don't claim, do you, that it was anything else than a mortgage?' (referring to the deed), and my recollection is that Mr. Solomon didn't answer. In fact I am quite sure he didn't answer, but I said: 'Yes; Mr. Solomon's claim is that it wasn't a mortgage; that it was an absolute purchase of the property.'" The plaintiff also testified that he was in possession of the property all the time, paid the taxes, and from time to time made many payments of interest to the defendant. He also put in evidence

numerous receipts given by Solomon to him, covering the period from July, 1898, to 1905, showing payments of money from plaintiff to the defendant aggregating more than $1,500. Some of the receipts read "for interest on account"; others, "interest on note," "cash on account of interest," and "on account of promissory note." Plaintiff also placed in evidence the defendant's books of account wherein the defendant had made entries of money received by him from plaintiff between 1898 and 1905 aggregating the sum of $1,383.90. Some of the entries read "cash, interest"; others, "interest"; some of them, "cash;" and a few of them, "cash, rent." The account opened with the entry, "cash, interest." Further along in the account appears the entry of date July, 1899, "this day I made it rent, $25." But further along in the account again appear entries under date as late as 1901, "interest, $50." The receipts and book entries are strong corroborative evidence of the claim made by plaintiff that the transaction had between him and the defendant was that of a loan, and that there existed a continuing indebtedness. There was also evidence showing that the value of the land was greatly in excess of the amount paid by the defendant, and that it increased in value more than twenty-five per cent.

Viewing the case from the standpoint of the evidence on behalf of plaintiff, the proof is clear and direct that the transaction between the parties was that of a loan and not a sale, and that the deed received by the defendant was security for the money paid by him to Morrell for the plaintiff's benefit. True the defendant testified that the transaction was not a loan, but a sale. He however, testified that he was partly in the business of lending money, and frequently had made loans and took deeds instead of mortgages for security. He further testified, in substance, that the plaintiff had frequent interviews with him, and was very solicitous of obtaining a loan from him, but that he told plaintiff he had no money to lend on the property, but that he would buy it; that the plaintiff told him if some one like him would not buy the property plaintiff and his wife would be put out; that he thereupon bought the property from Mr. Morrell through Mr. Stephens,

substantially as testified to by Stephens, except that he stated to Stephens if he would sell the property he would buy it; and that Stephens sold it to him. He further testified that he stated to plaintiff if he bought the property he would rent it to him and that after he had bought it he rented it to plaintiff and "fixed the rent at the rate of interest that Duerden had mortgaged it for; that the rent should be the amount of the interest, the interest on the money paid; and that Duerden should pay the taxes." The defendant also put in evidence a written agreement signed by Solomon and his wife and the plaintiff and his wife, by the terms of which the defendant agreed to sell and convey to the wife of plaintiff the land in question for the sum of $2,224.95, to be paid on or before April 1, 1899, together with interest at the rate of eight per cent. per annum from the 14th day of June, 1898. This was put in evidence as proof that the plaintiff recognized the defendant as the owner of the property; that the defendant had given his wife an option to purchase it within a certain time, which was of the essence of the contract; and that at the expiration of that time the plaintiff ceased to have any interest in and to the property. The contract on its face does not prove as much as does the deed. Considering it in connection with the deed, it rather tends to support the claim of plaintiff that the transaction was a loan and not a sale. At any rate it renders the transaction doubtful as to whether it was a conditional sale or a mortgage, in which case it ought to be treated as a mortgage. Conceding, however, that the deed on its face raises a presumption of sale, and that the contract shows an agreement to resell, the defendant has not successfully met the positive and direct evidence on behalf of plaintiff which clearly shows that the real transaction between the parties was one of security and not of sale; nor did the defendant successfully account for or explain the giving of his numerous receipts for the payment of money on account of interest. On these questions there is not even much conflict in the evidence.

We are therefore of the opinion that the findings of the

court are abundantly supported by the evidence, and that the judgment ought to be affirmed, with costs. It is so ordered.

McCARTY, C. J., and FRICK, J., concur.

